**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**SOUTHERN DIVISION**

**WILBERT CROOK, #94141**                                          **PETITIONER**

**v.**                                          **CIVIL ACTION NO. 1:13-CV-551-KS-MTP**

**CHRISTOPHER EPPS, et al.**                                          **RESPONDENT**

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on the Petition for Writ of Habeas Corpus [1] ("Petition")

filed pursuant to 28 U.S.C. § 2254 by Wilbert Crook ("Crook") and his subsequent Motion for

Hearing and Discovery ("Motion for Hearing")[18].  Crook is currently incarcerated by the State

of Mississippi following a conviction of aggravated assault.  Crook was sentenced to twenty (20)

years in the custody of the Mississippi Department of Corrections.  After considering the pleadings,

the state court records, and relief sought by Crook, the Court has concluded that the Petition [1] and

the Motion for Hearing [18] should be denied.

**I.  BACKGROUND**

On July 18, 2009, Loletta Dunn ("Dunn"), her cousin Gemile Carter ("Carter"), and

Dunn's three children were in her car on their way to Dunn's father's house.  Crook, who had

previously been romantically involved with Dunn, went looking for her in Victor Ramirez's

("Ramirez") truck.  Willie Smith ("Smith") was in the truck with him.  Crook passed Dunn on

the road and both cars pulled over.  Crook and Dunn both exited their vehicles and began

arguing.

Dunn testified that Carter then exited the vehicle in her defense.  Smith testified that

when Carter first got out of the car, he had a ceiling fan blade in his hand, but that he tossed it

back in the vehicle before approaching Crook.  Carter claimed he tossed the fan blade back

inside the car after Crook told him to "fight like a man."  Crook and Carter then began fist

fighting.  Smith stated that he tried to break the two up, but when he did, Crook cut him on the

nose.  Dunn testified that she eventually broke them up.  Dunn then stated:

> And the next thing I know I see Wilbert Crook come out with a box cutter, and
> I'm like "Don't cut my cousin. Don't cut him."  Like that.  But they was steady
> arguing, but [Crook] looked like he was putting the box cutter back in his pocket,
> but then they started fighting again and the next thing I know I just see my cousin
> got blood all over his shirt.

(SCR [10-2] at p. 140.)  Smith testified that he saw Crook put Carter in a headlock and then saw

blood coming from Carter.

Dunn and Carter left the scene, and Dunn dropped Carter off at her house and asked

someone to call the police.  Dunn then went to Ramirez's apartment, where Crook had been

staying, in order to keep him at the apartment until the police arrived.

Carter's wounds required hospitalization, and he was treated by Dr. Eric Jordan, who

testified that the injuries were potentially life-threatening, as they penetrated the muscle and one

of his lungs collapsed as a result of the stabbing.

In February 2010, while Crook was being held in the Forrest County Jail, Smith was

arrested for a probation violation and shared a cell block with Crook.  During that time, Crook

wrote out a statement about the incident and had Smith sign it, which was witnessed by three

fellow prisoners.  Smith is illiterate, but was able to sign his name.  This statement claimed that

Carter had hit Crook in the face with the fan blade and that Carter then pushed Crook down and

they rolled around on the ground a few times before the fight was broken up.

On October 15, 2010, the jury found Crook guilty of aggravated assault, and he was

sentenced to twenty (20) years in prison.  Crook appealed.  On April 10, 2012, the Court of

Appeals of Mississippi affirmed the conviction, and Crook applied for a writ of certiorari to the Mississippi Supreme Court. On January 17, 2013, the Mississippi Supreme Court found that there was no need for further review. Crook then filed his Motion for Post-Conviction Collateral Relief [10-7] with the Mississippi Supreme Court, which was denied on its merits on June 5, 2013. (SCR [10-8].)

Crook then filed this current action on September 5, 2013, pursuant to 28 U.S.C. § 2254.

## II. DISCUSSION

### A. Standard of Review

A writ of federal habeas corpus shall not be granted to a state prisoner on a claim that was adjudicated on the merits in state court unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or . . . that was based on an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254(d).

In order for relief to be granted, the applicant must have "exhausted his remedies available in the courts of the State" unless "there is an absence of available State corrective process" that would be effective in the applicant's case. 28 U.S.C. § 2254(b). A claim is presumed to have been adjudicated on the merits by the state court even if the state court's reasoning does not address federal law specifically. *Johnson v. Williams*, 133 S.Ct. 1088, 1094, 185 L.Ed.2d 105 (2013) (citing *Harrington v. Richter*, 131 S.Ct. 770, 784-85, 178 L.Ed.2d 624 (2011)). This presumption can be overcome only in limited circumstances. *Id.* at 1096.

Where questions of law or mixed questions of law and fact are concerned, federal habeas relief cannot be granted unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A state court

3

decision is contrary to federal precedent if it is "diametrically different" to clearly established Supreme Court precedent. *Williams v. Taylor*, 529 U.S. 362, 406, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court decision, then, would be contrary to federal precedent if it "confront[s] a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." *Id.*

The Fifth Circuit has adopted Justice O'Connor's understanding of "unreasonable application" for purposes of habeas review, calling for an evaluation of whether the application was "objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 236 (5th Cir. 2002) (quoting *Williams*, 529 U.S. at 409, 120 S.Ct. 1495 (O'Connor, J., concurring)). Justice O'Connor elaborates this standard by saying that "[t]he federal habeas court should not transform the inquiry into a subjective one by resting its determination instead on the simple fact that at least one of the Nation's jurists has applied the relevant federal law in the same manner the state court did." *Williams*, 529 U.S. at 409-10, 120 S.Ct. 1495 (O'Connor, J., concurring). In sum, the application of federal law by a state court is considered reasonable as long as "fairminded jurists could disagree" on its correctness. *Richter*, 131 S.Ct. at 786 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004)).

Crook brings numerous grounds in his Petition [1]. The Court will examine each of these grounds in turn.

## B.    State Law Grounds

Both Grounds Two and Three[1] of the Petition [1] challenge Crook's conviction on state law grounds. Ground Two challenges Crook's indictment, and Ground Three claims that his conviction

---

[1]Crook numbers his grounds differently in his Petition [1] and his Brief in Support [2]. The Court refers to the numbers Crook uses in his Petition [1] for his state law grounds.

was against the weight of the evidence presented at trial.

On habeas review, the sufficiency of an indictment can only be a basis of relief "if the mistake in the indictment is so fatally defective that it deprives the convicting court of jurisdiction." *Riley v. Cockrell*, 339 F.3d 308, 313-14 (5th Cir. 2003); *see also Williams v. Collins*, 16 F.3d 626, 637 (5th Cir. 1994). Crook does not argue that his indictment deprived the convicting court of jurisdiction, and the Mississippi Supreme Court found that his argument that the indictment was defective was without merit. "State law dictates whether a state indictment is sufficient to confer a court with jurisdiction." *Williams*, 16 F.3d at 637. The Court does not have jurisdiction to review the Mississippi Supreme Court's decision as to the indictment, and must therefore deny the Petition [1] as to this ground. *See Moore v. Roberts*, 83 F.3d 699, 701 (5th Cir. 1996) ("When a state court decision rests on a state law ground that is independent of a federal question and adequate to support the judgment, federal courts lack jurisdiction to review the merits of the case.").

The record shows that Ground Three of the Petition [1] was not presented to the Mississippi Supreme Court in Crook's Motion for Post-Conviction Collateral Relief [10-7] and was therefore not exhausted at the state court level. Ordinarily, the Court would dismiss a habeas petition that presented both exhausted and unexhausted claims for failing to satisfy the "total exhaustion" requirement of § 2254(b). *Neville v. Dretke*, 423 F.3d 474, 482 (5th Cir. 2005) (citing *Rose v. Lundy*, 455 U.S. 509, 510, 102 S. Ct. 1198, 71 L.Ed.2d 379 (1982)). However, § 2254(b)(2) gives the Court authority to deny an application for habeas on the merits even if the claims presented have not all been exhausted. *Id.* As the Court ultimately finds that none of Crook's grounds have merit and that the Petition [1] should be dismissed with prejudice on the merits, the Court will not dismiss the Petition [1] for failure to exhaust.

Crook makes two claims in his Ground Three. First, he claims that his conviction was based

on insufficient evidence.   Alternatively, he claims that there the weight of the evidence was insufficient to support his conviction.   Crook's argument that his conviction was against the weight of the evidence fails as it is "purely a matter of state law and is not cognizable on habeas review." *Wansley v. Fisher*, No. 3:14-CV-517-HTW-LRA, 2015 WL 1650079, at *4 (S.D. Miss. Apr. 14, 2015) (citing *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985)).   Therefore, the Court has no jurisdiction to review Crook's weight-of-the-evidence claim.

However, Crook's sufficiency-of-the-evidence claim is based on federal principles of due process, which require the State to prove each element of the offense beyond a reasonable doubt. "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found th essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979) (emphasis in original).   On direct review, the Mississippi Court of Appeals found the following:

> Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence presented for the jury to convict Crook of aggravated assault. The jury was instructed on the elements of aggravated assault: that Crook "unlawfully, willfully, and feloniously and knowingly caused bodily injury to Gemile Carter with a box cutter." *See* Miss.Code Ann. § 97–3–7(2)(b) (Supp.2011). It was further instructed it must find "such behavior was not done in necessary self-defense."   The State presented sufficient evidence that Crook was the initial aggressor and did not act in self-defense.   Crook went looking for and found Loletta in an attempt to reconcile their relationship, but during the confrontation Loletta told him to quit following her.   Crook and Smith had been drinking before the altercation. Carter exited Loletta's vehicle to tell Crook to stop "disrespecting" his cousin Loletta.   According to Loletta's testimony, Carter did not have a weapon, and Crook "got up in [Carter's] face and cursed him."   Carter testified he retrieved the fan blade only after Crook became violent towards him; however, Carter did not walk towards Crook with the fan blade, but put it back in the vehicle.   Carter also testified he never hit Crook with it.   Crook testified that he was cursing Loletta, that Carter exited Loletta's vehicle without a weapon, and Crook hit Carter.   Loletta testified Crook pulled the box cutter out of his pocket.   Smith, who was with Crook during the incident, also testified that Carter put the fan blade back in the vehicle and did not hit Crook with it. Although Smith did not see Crook stab Carter, he did see Crook's arm move when Crook had Carter in a headlock, and then there was blood

6

everywhere.  Further, Ramirez testified that Crook told him he had cut someone. Additionally, Carter's wounds were consistent with a stabbing, as they were deep.

Viewing the evidence in the light most favorable to the State, there was sufficient evidence to convict Crook of aggravate [sic] assault.

*Crook v. State*, 105 So.3d 353, 364 (Miss. Ct. App. 2012).  Based on the record before it, the Court cannot find that this conclusion reached by the state court was either contrary to or an unreasonable application of the rule as articulated in *Jackson v. Virginia*.  Therefore, habeas relief would not be granted as to Crook's Ground Three even if it had been properly exhausted and presented to this Court.

## C.    Ineffective Assistance of Counsel

The remaining grounds presented in the Petition [1] all allege ineffective assistance of counsel.  The standard for ineffective assistance of counsel claims is found in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984).  The *Strickland* test requires that two prongs be met before assistance of counsel is found to be deficient.  *Id.* at 687.  First, counsel's performance must be shown to be deficient.  *Id.*  "To establish deficient performance, a petitioner must demonstrate that counsel's representation 'fell below an objective standard of reasonableness'" as established by "prevailing professional norms."  *Wiggins v. Smith*, 538 U.S. 510, 521, 123 S. Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting *Strickland*, 466 U.S. at 688, 104 S. Ct. 2052).  Such scrutiny of counsel's performance is "highly deferential."  *Strickland*, 466 U.S. at 689, 104 S. Ct. 2052. Second, counsel's performance must have prejudiced the defendant.  *Id.* at 687  To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694, 104 S. Ct. 2052.

While establishing a claim of ineffective assistance of counsel *Strickland* is difficult,

"[e]stablishing a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 178 L.Ed.2d 624 (2011) (internal quotations and citations omitted).  The question on habeas review is not whether the *Strickland* standard is met, but rather "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

The Mississippi Supreme Court, in denying his Motion for Post-Conviction Collateral Relief, found that Crook failed to prove his claims of ineffective assistance of counsel under *Strickland*. (Order Denying Collateral Review [9-3].)  Under a § 2254 review, Crook must show that this determination was unreasonable because there existed no "reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *See Harrington*, 562 U.S. at 105, 131 S. Ct. 770.

1.    **Ground One[2]:  Complete Denial of Counsel at a Critical Proceeding**

Crook claims in this ground that he was denied assistance of counsel while taking the deposition of Smith, and that under *United States v. Cronic*, this violated his Sixth Amendment rights.  *Cronic* held that denial of counsel at a "critical stage" of trial was presumptively prejudicial. 466 U.S. 648, 659, 104 S. Ct. 2039, 80 L.Ed.2d 657 (1984).  The Fifth Circuit has held that, on review under § 2254, for habeas relief to be granted for such a claim as this, the proceeding in question must have been deemed a "critical stage" under "clearly established federal law" as interpreted by the Supreme Court.  *Gomez v. Thaler*, 256 F.App'x 355, 359 (5th Cir. 2013) (citing *Williams v. Taylor*, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).  Even assuming Crook's allegations are true, there is no Supreme Court precedent clearly establishing that the taking

---

[2]The Court refers to the grounds for ineffective assistance of counsel by the number they are given in Crook's Brief in Support [2], as they are analyzed in the same order.

of a deposition is a "critical stage" of a trial.  Therefore, it cannot be said that the state court unreasonably applied clearly established federal law, and habeas relief cannot be granted on this ground.

### 2. Ground Two:  Counsel Withheld Critical Evidence from Crook

Crook argues that had his counsel allowed him to listen to Smith's recorded statement before trial, he would not have gone to trial, presumably meaning that he would have pled guilty.  Under a *Strickland* analysis, to prove ineffective assistance of counsel, Crook must prove both deficient performance and prejudice.  Crook contends that had he known that Smith would testify against him, he would have taken the plea bargain offered by the prosecution before the trial.  Crook knew, though, that Smith had been subpoenaed to be a witness for the prosecution.  Nevertheless, Crook asserts that he still believed that Smith was going to testify on his behalf, and argues that his counsel knew of this belief.  Counsel's performance does not become ineffective simply because Crook did not believe that Smith was going to testify against him, despite knowing he was being called as a witness for the prosecution.  Counsel did not in any way communicate that Smith's testimony was going to be favorable to Crook, and the chance that it might have been unfavorable to him was apparent from the context.  Therefore, Crook is unable to prove the performance prong of *Strickland*, and the state court was not unreasonable in denying relief.

### 3. Ground Three:  Failed to Adequately Investigate/Interview Loletta Dunn

Crook argues that, although counsel interviewed Dunn and found her deposition to be consistent with her statement to police, counsel was deficient because he failed to discover that Dunn and Smith were friends and neighbors and that Smith was not cut on the nose.  The Mississippi Supreme Court held that Crook's counsel satisfied the *Strickland* standard on this argument.  Even if counsel had been able to ascertain such facts from Dunn and present them to impeach Smith, and

9

even if his failure to do so was objectively unreasonable by professional standards, it was not unreasonable for the state court to find that Crook could not show a reasonable probability of a different outcome had Smith's testimony been impeached.  Therefore, relief cannot be granted on this ground.

4.      **Failure to Investigate/Retrieve Fan Blade and have it tested for Crook's DNA**

Crook claims that counsel's failure to retrieve the fan blade and have DNA testing done amounted to ineffective assistance of counsel.  Had this DNA testing been done, Crook contends, his DNA would have been found on the fan blade.  He argues that this would have proven that Carter did hit him with the fan blade, and would have impeached the testimonies of the prosecution's witnesses who said that he was not hit with the fan blade.  The Mississippi Supreme Court found that this did not rise to ineffective assistance of counsel as analyzed under *Strickland*.  Even assuming performance was deficient, for Crook's argument to have merit, he would have to prove that the fan blade was both available for such testing and that the testing would have supported his testimony and would have resulted in a reasonable probability that he would not have been convicted.  It was not unreasonable for the state court to find that Crook had not proven this.  Therefore, federal habeas relief cannot be granted on this ground.

5.      **Ground Five:  Failure to Interview/Investigate Loletta Dunn's Children**

Crook contends that counsel was deficient for not interviewing and investigating Dunn's children because they may have been useful in rebutting Dunn's testimony.  "A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial."  *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989).  Crook merely argues that Dunn's children may

10

have given a statement that impeached Dunn's testimony.  Crook's arguments amount only to vague speculations of what Dunn's children might have said had they been interviewed.  It would not have been unreasonable for the state court to find that counsel's failure to investigate Dunn's children did not amount to a failure under the performance prong of *Strickland*.  Therefore, relief cannot be had under § 2254 for this ground.

**6.      Ground Six:  Counsel Failed to Investigate/Interview Rozario Hawthorne**

In Ground Six, Crook argues that counsel should have investigated and interviewed Rozario Hawthorne, Smith's cell mate, who would have testified that Smith told him that he and Dunn were good friends.  The knowledge that Smith and Dunn were good friends, Crook contends, would have undermined both of their testimonies.  Even if Crook's counsel had gotten this information from Hawthorne, he cannot show that Hawthorne's testimony would have been admissible at trial, because of potential hearsay problems, nor can he show that there was a reasonable probability that the outcome of his trial would have been different, as evidence of Dunn and Smith's friendship does not necessarily negate their entire testimonies or the other evidence presented against him.  As such, the state court's application of *Strickland* as to this ground was not unreasonable, and federal habeas relief cannot be granted.

**7.      Ground Seven:  Failed to Consult an Expert in Wound Patterns, a Forensic Expert in Physics or Pathologist**

Crook argues that his counsel should have consulted an expert to support Crook's contention that the stabbing was an accident that occurred when he and the victim fell to the ground.  To succeed on an ineffective assistance of counsel claim on the premise of failure to call an expert witness on habeas, the Fifth Circuit requires Crook to "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's

proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009). Crook has failed to meet any of these requirements. As such, the Court cannot say that the state court was unreasonable for denying relief on this claim, and habeas relief will be denied.

### 8.      Ground Eight: Counsel Failed to Motion to Demur or Quash Indictment Due to Uncharged Essential Element

Crook claims that his counsel was deficient because he failed to move to quash his indictment as defective. The Mississippi Supreme Court found that Crook's indictment was not defective. Therefore, any motion challenging the indictment would have been meritless, and "[c]ounsel is not required by the Sixth Amendment to file meritless motions." *United States v. Gibson*, 55 F.3d 173, 179 (5th Cir. 1995). Counsel could not be ineffective under the *Strickland* standard on this ground, and the state court was right to deny relief. The Petition [1] will not be granted on this ground.

### 9.      Ground Nine: Counsel Failed to Investigate/Interview Dr. Eric Jordan

Crook argues that his counsel should have interviewed Dr. Eric Jordan, the physician that treated Carter after the stabbing, and asked if his injuries could have been consistent with falling on a sharp object. Crook asserts that the doctor's answer would have been yes. This assertion, however, is mere speculation on the part of Crook. For relief to be granted to Crook on the argument of uncalled witnesses, he must "name the witness, demonstrate that the witness was available to testify and would have done so, set out the content of the witness's proposed testimony, and show that the testimony would have been favorable to a particular defense." *Day*, 566 F.3d at 538. Crook has not shown that Dr. Eric Jordan's testimony would be favorable to his defense, and therefore the state court was not unreasonable to not grant relief on this ground.

10. **Ground Ten:  Failure to Interview Victor Romez before Trial**

Crook contends that if counsel would have interviewed Victor Romez before trial, he would have discovered that Romez was good friends with Smith and was therefore biased.  Crook, however, cannot prove that this fact, had it been introduced to the jury, would have so undermined Romez's testimony that there was a reasonable probability that he would not have been convicted. *See Strickland*, 466 U.S. at 694, 104 S. Ct. 2052.  Crook therefore cannot establish prejudice on this ground, and the state court was not unreasonable to deny relief.

11. **Ground Eleven:  Counsel Failed to Investigate the Crime Scene**

Crook contends that counsel was deficient in failing to discover video footage of the crime. The buildings surrounding the crime scene, Crook asserts, have outside cameras that may have captured the entire incident.  Crook does not, however, definitively know that such video footage exists.  Furthermore, Crook does not know that counsel did not investigate whether such footage existed, claiming only that "counsel never discussed anything with Crook about the crime scene." (Brief in Support [2] at p. 32.)  *Strickland* would not hold counsel ineffective for failing to discover evidence that may not have existed, and the state court was correct in denying relief on this ground.

12. **Ground Twelve:  Counsel Denied Crook the Right to Testify at his Hearing on Motion to Suppress and Failed to Pursue a Ruling from the Court on Counsel's Motions**

Crook argues that counsel was deficient because he was denied the right to testify at the hearing on his motion to suppress his previous statements and because counsel did not effectively investigate and argue this motion.  Though a right to testify at trial is constitutionally and statutorily guaranteed, there is no precedent by the Supreme Court that establishes a criminal defendant's indisputable right to testify at a pretrial hearing, nor is there any precedent establishing that it is

ineffective assistance of counsel to not put a criminal defendant on the witness stand for such a hearing. Crook cannot show that counsel's performance fell below professional standards by failing to allow him to testify at this hearing, nor can he show that this failure prejudiced him in such a way that the ruling on the motion would have been different, let alone that the outcome of entire case against would be different. As such, Crook can prove neither prong of *Strickland* under this argument, and the state court was not unreasonable in denying relief. Furthermore, Crook offers no evidence to support his contention that this motion was not diligently pursued by his counsel and no such evidence is apparent from the record before the Court. Therefore, habeas relief will be denied as to this ground.

### 13.     Ground Thirteen: Counsel Failed to Adequately Interview Crook and Failed to Consult Crook that Smith Would Testify Against Crook

Crook makes two arguments under this ground. First, he argues that had his counsel interviewed him, Crook would have told him that Smith and Dunn were good friends. He does not, however, give any justification for why he did not volunteer that information to his counsel. If he felt it would have been beneficial to his case, Crook could have told his counsel about it in any of their meetings. The Court cannot find that his counsel's performance was lacking simply because Crook himself failed to give information that he held to his counsel.

Second, Crook argues that his counsel did not inform him that Smith was going to testify against him and that, had he known this, he would have taken the plea bargain of ten years offered by the prosecution before trial. Crook contends that counsel admitted that he was unsure of what Smith would testify to at trial, though he did inform Crook that Smith was being called as a witness for the prosecution.

The Supreme Court has addressed the nonacceptance of plea offers in two cases: *Missouri*

*v. Frye*, 132 S. Ct. 1399, 182 L.Ed.2d 379 (2012), and *Lafler v. Cooper*, 132 S. Ct. 1376, 182 L.Ed.2d 398 (2012).  In *Frye*, the defense counsel failed to communicate a formal plea offer to the accused, which the Supreme Court held to be an affirmative duty of counsel.  132 S. Ct. at 1408. In that case, the defendant went on to plead guilty without an underlying plea agreement.  *Id.* at 1404.  In *Lafler*, counsel advised the defendant to reject the plea offer because he could not be convicted at trial, which all parties later agreed amounted to deficient performance under *Strickland*. 132 S. Ct. at 1384.  The defendant in *Lafler* went on to be convicted by jury after a full and fair trial. *Id.*

In both *Frye* and *Lafler*, the Supreme Court held attorneys to the *Strickland* standard and required proving both a deficient performance and actual prejudice.  Even if Crook's counsel not knowing the content of Smith's testimony before trial amounted to deficient performance in the same manner that counsel's complete failure to communicate a plea offer would be, *see Frye*, 132 S. Ct. at 1408, Crook has failed to show prejudice.  "To show prejudice from ineffective assistance of counsel where a plea offer has . . . been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability they would have accepted the . . . plea offer had they been afforded effective assistance of counsel."  It was not unreasonable of the state court to determine that an assertion, made after an unfavorable verdict, that Crook would not have gone to trial had he known Smith was going to testify against him, was not enough to grant him collateral relief.  It is indisputable that Crook knew Smith was going to testify, and it can be presumed that Crook knew that Smith was going to testify truthfully and under penalty of perjury.  The Court cannot say, then, that the state court was unreasonable in deciding that his counsel provided effective assistance under *Strickland* even if he were unable to tell Crook exactly what the content of Smith's testimony would be.  Therefore, federal habeas relief is not appropriate on this ground.

### 14.   Ground Fourteen:  Failed to Move for a Preliminary Hearing

Crook's argument under this ground is a reiteration of his arguments concerning his general unawareness of what Smith's testimony would consist of at trial.  Here, he is arguing that he should have had a preliminary hearing where this testimony would have been revealed.  The purpose of a preliminary hearing is to decide if there is enough probable cause to proceed to trial.  There would have been no guarantee that Smith's testimony would have been presented a hearing, and there is no evidence that such a hearing would have had any sort of meaningful impact on the proceedings against Crook.  As such, the state court was correct to deny relief under *Strickland* for counsel's failure to move for a preliminary hearing.

### 15.   Ground Fifteen:  Counsel Failed to Move for an Omnibus Hearing

Crook argues that counsel's failure to move for an omnibus hearing to discover the contents of Smith's testimony amounted to a deficiency in his performance.  However, Crook cannot prove that such a hearing would have been granted, let alone changed the outcome of his trial.  Therefore, the state was not unreasonable in denying relief under *Strickland* on this ground.

### 16.   Ground Sixteen:  Failed to Interview Smith

Crook argues that counsel provided ineffective assistance by not interviewing Smith and discovering what his  testimony would be.  He further argues that, had he known what Smith's testimony was, he would have accepted the plea offer from the prosecution.  Even if this was deficient performance, as stated above, it was not unreasonable for the state court to find that Crook's after-the-fact assertion that he would have accepted a plea offer was not enough to establish prejudice under *Strickland*.  As such, federal habeas relief will not be granted on this ground.

### 17.   Ground Seventeen:  Counsel Failed to Object to a Discovery Violation (Ambush by Trial) Concerning the Testimony of Smith and Carter and Failed to Ask for

**a Continuance or Mistrial**

Crook makes two arguments under this ground.  First, he argues that counsel should have objected to the testimony of Smith and Carter, both of whom testified that Carter did not hit Crook with the fan blade, and should have asked for a mistrial.  Crook, however, cannot demonstrate that any objection would have been sustained nor can he show that he would have obtained a mistrial had a motion for one been made.  The Mississippi Supreme Court found that this argument had no merit under *Strickland*.  The Court finds that this determination was not unreasonable as Crook cannot demonstrate prejudice.

Crook also argues that counsel should have asked for a continuance after opening statement and after learning the evidence the prosecution planned to introduce, which would have given Crook the opportunity to accept the plea offer made prior to trial.  However, Crook cannot prove that there was a reasonable probability that this continuance would have been granted, that the plea offer would still be available, or that he would have definitely taken it given the chance.  As he cannot prove prejudice under this argument, it was not unreasonable for the state court to find that his claim on this ground could not pass a *Strickland* analysis.

**18.     Ground Eighteen:  Counsel Failed to Investigate/Interview Carter**

Crook contends that had counsel investigated and interviewed Carter, he would have learned that Smith was not cut on the nose by Crook.  However, he presents no proof other than his own speculation that Carter would have testified to that.  Furthermore, Crook offers no proof that there was a reasonable probability he would not have been convicted if Carter had testified that he had not cut Smith on the nose.  Because Crook has not shown prejudice to his case, the state court was not unreasonable in finding that he had not met both prongs of *Strickland* on this ground.

**19.     Ground Nineteen:  Counsel Failed to Fully Cross-Examine and Impeach Dunn,**

**which denied Crook of his Right to Confront the Witness**

Crook argues here that Dunn testified that the stabbing was an accident at trial and counsel was deficient in not cross-examining her as to this point.  However, the record shows that Dunn never described the incident as an accident.  Crook's arguments on this ground, then, are misguided.

20.    **Ground Twenty:   Counsel Failed to Cross-Examine/Impeach Smith with Inconsistent Statements**

Crook argues that his counsel failed to cross-examine and impeach Smith using his previous inconsistent statements.  The record, though, shows that counsel did cross-examine Smith as to his previous statements and attempted to impeach him using those statements.  Crook's arguments are therefore meritless.

21.    **Ground Twenty-One:  Counsel Failed to Adequately Cross-Examine Smith**

Crook further contends that counsel's entire cross-examination of Smith was deficient.  The record shows that counsel diligently cross-examined Smith.  Crook's arguments on this ground have no basis.

22.    **Ground Twenty-Two:  Counsel Failed to Adequately Cross-Examine Carter or Impeach Carter with Inconsistent Statement**

Crook argues that counsel was deficient for not asking Carter on cross-examination how many fights he and Crook were in, asserting that Carter may have answered two which would have supported Crook's theory of the incident.  However, speculation of what a witness may have testified to had a particular question been asked is not enough to show that counsel provided ineffective assistance.  Furthermore, the argument that counsel failed to cross-examine Carter as to his inconsistent statement to the police is contrary to the record.  The state court could have reasonably found that counsel was not ineffective under *Strickland* on this ground.

### 23.    Ground Twenty-Three:  Counsel Failed to Object to Expert Testimony by Officer Eric Hatten

Crook contends that Officer Eric Hatten was testifying as an expert when he opined that the bruise on Crook's face was caused by a fist rather than an object.  It does not seem readily apparent from the record that Officer Hatten's testimony was not an opinion "rationally based on [his] perception" as allowed by Mississippi Rule of Evidence 701.  A failure to object to this testimony would not necessarily constitute deficient performance.  Furthermore, if the officer had not been allowed to testify to this opinion, Crook cannot demonstrate that there was a reasonable possibility that he would not have been convicted on the other evidence against him.  Therefore, the state court was not unreasonable in deciding that this ground did not meet the standard from *Strickland*.

### 24.    Ground Twenty-Four:  Counsel Failed to Adequately Cross-Examine Dr. Eric Jordan

Crook's arguments on this ground are identical to the ones under his Ground Nine for failure to interview Dr. Eric Jordan.  Crook's arguments amount to speculation of what the witness might have said had certain questions been asked.  Counsel's performance cannot be said to be deficient based on such speculation, nor can prejudice be sufficiently proven.  Therefore, the state court was not unreasonable for denying this ground under *Strickland*.

### 25.    Ground Twenty-Five:  Counsel Failed to Argue to the Court the Specific Element the State Failed to Prove, or in the Alternative, the Variance Between the Proof at Trial and the Statement of the Essential Facts in the Body of the Indictment

Crook contends that the prosecution did not prove an essential element in the indictment, namely that Carter was stabbed three times, and that counsel was deficient for not asking for a

directed verdict on that ground. Crook makes this argument because Dr. Eric Jordan never explicitly calls Carter's wounds "stab wounds," referring to them instead as "lacerations." It is clear from the context, however, that these lacerations were caused by someone stabbing Carter with a sharp instrument. (*See* SCR [10-3] at pp. 102-03.) The fact that these lacerations were to the left chest wall and belly muscle indicates that these were more that just "cuts" as Crook argues. (*Id*.) Because the lacerations Dr. Jordan testified to were consistent with stab wounds, it was not unreasonable for the state court to not find counsel's performance deficient under *Strickland* on this ground.

### 26.   Ground Twenty-Six:  Counsel Failed to Impeach Smith Through Rebuttal Witness Kelvin Mason

Crook argues that counsel failure to impeach Smith using Kelvin Mason as a rebuttal witness amounted to ineffective assistance of counsel. The record, however, shows that counsel thoroughly questioned Mason about the inconsistent statement Smith gave and signed while in jail with Crook. The state court was not unreasonable in finding no ineffective assistance of  counsel under *Strickland* on this ground.

### 27.   Ground Twenty-Seven:  Counsel was Deficient with the Introduction of Smith's Inconsistent Statement

Crook contends that counsel was ineffective for not admitting the written statement of Smith into evidence. Even if this statement were admissible and admitted into evidence, Crook has failed to show that a failure to do so prejudiced him. The jury knew the substance of this statement from counsel's cross-examination of Smith and from his direct examination of Kelvin Mason. Crook cannot show that admitting the written statement itself into evidence would have likely changed the outcome of his case. Therefore, the state court was not unreasonable in denying collateral relief on this ground.

28.     **Ground Twenty-Eight:  Counsel Failed to Submit or Request a Jury Instruction to Guide the Jury on How to Weigh and give Credibility to Smith's Statement**

Crook argues that his counsel provided ineffective assistance because he failed to submit a jury instruction that specifically addressed Smith's statements.  Even if this was deficient performance, Crook has not demonstrated that such an instruction would have been accepted nor has he shown that such an instruction would have made a different verdict reasonably probable.  Because of this failure to show prejudice, this Court cannot say the state court was unreasonable in finding that counsel was not ineffective under *Strickland* on this ground.

29.     **Ground Twenty-Nine:  Counsel Failed to Object to Prosecutor Misconduct in Mischaracterization of Evidence by Prosecutor**

Crook's argument on this ground is that the prosecutor mischaracterized the "lacerations" Dr. Eric Jordan testified Carter had as "stab wounds."  As previously stated, from the context of Dr. Jordan's testimony, it is clear that these lacerations were caused by Carter being stabbed with a sharp object.  Therefore, there would have been no basis for an objection by Crook's counsel, and a failure to make an objection would not be deficient performance.  Therefore, it was not unreasonable of the state court to find that Crook could not meet both prongs of *Strickland* on this ground.

30.     **Ground Thirty:  Counsel was Deficient for Bolstering for the Credibility of Detective Steve Pazos**

Crook contends that his counsel was deficient for bolstering Detective Steve Pazos's credibility by not highlighting the fact that his report did not mention that Smith said Carter had the fan blade as a weapon, which Smith testified that he told the detective in his statement.  However, the record shows that Crook's counsel did ask him why that was not in his report, to which Pazos

21

responded that he did not recall.  (SCR [10-3] at p. 97.)  The jury had already heard testimony from Smith that Pazos was informed of the fan blade.  Furthermore, Crook's counsel drew attention to the fact that Smith told Pazos about the fan blade in his closing argument.  (SCR [10-4] at p. 101.) The state court was not unreasonable in deciding that this performance was not deficient under a *Strickland* analysis, and federal habeas relief is not available on this ground.

### 31.    Ground Thirty-One:  Counsel Failed to Object to the Prosecutor Giving Expert Testimony Violating Crook's Due Process Rights

Crook argues that the prosecutor's questions on cross-examination of Crook amounted to the prosecutor giving expert testimony and was prosecutorial misconduct to which his counsel should have objected.  Even if this were prosecutorial misconduct and even if Crook's counsel should have objected, the failure to object does not seem to be so objectively unreasonabl as to make his performance deficient under *Strickland*.  It is also not clear that it was reasonably probable that the objection would have been sustained, let alone that it would it was reasonably probable to change the outcome of the case.  The state court was not unreasonable, then, in holding that both prongs of *Strickland* were not met for this ground.

### 32.    Ground Thirty-Two:  Counsel Was Deficient and Unreasonable to Withdraw Jury Instruction D-6

Crook contends that counsel provided ineffective assistance of counsel by withdrawing Jury Instruction D-6, which would have instructed the jury on the elements of simple assault and asked the jury if they found that Crook negligently inflicted a bodily injury with a deadly weapon.  This instruction was objected to by the prosecution, and the trial court did not have an opportunity to rule on this objection before the instruction was withdrawn.  (SRC [10-4] at pp. 72-73.)  The instruction was withdrawn after the trial court advised defense counsel that it seemed to run contrary to the

22

defense's theory of accident.  (*Id.* at p. 73.)  The decision to withdraw an objected to jury instruction after such advice does not make counsel's performance so deficient that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687. Crook can also not demonstrate that he was prejudiced by this withdrawal, as he has not shown that there was a reasonable probability of this instruction being accepted by the court, nor has he shown that there was a reasonable probability the jury would have convicted on this instruction instead of the aggravated assault charge.  It was not unreasonable, then, for the state court to conclude that the two prongs of *Strickland* were not met on this ground.

33.    **Ground Thirty-Three:  Counsel was Deficient for Going to Trial on the Theory of Self-Defense and Counsel Misstated the Elements of Self-Defense to the Jury**

Crook argues that his counsel was deficient for going to trial on the theory of self-defense knowing that Crook would not admit to stabbing Carter, which he contends is an essential element of self-defense.  Defense's theory at trial was a combination of self-defense and accident, and the jury received instructions on both.  During closing arguments, defense counsel argued that Crook pulled the box cutter out in self-defense, but that the ensuing injury occurred accidentally while the two men were on the ground.  (SRC [10-4] at pp. 408-09.)  The Court cannot find counsel's performance deficient for using a theory that would explain why the deadly weapon was in the defendant's hand.  Therefore, the state court was not unreasonable for finding that counsel was not ineffective under *Strickland*.

34.    **Ground Thirty-Four:  Counsel Failed to Object to the Prosecutor's Elicitation of False Testimony from Carter**

Crook's argument on this ground is based again on his mistaken belief that the "lacerations" Carter had from the box cutter were not "stab wounds."  He argues that the prosecution committed

23

misconduct by allowing Carter to testify that he was stabbed when there were only these lacerations. As the Court has already discussed, from the context of Dr. Eric Jordan's testimony, it is clear that these lacerations were caused by Carter being stabbed with a sharp object. Therefore, there is no basis for this ground, and the state court was not unreasonable to deny relief on it.

35.     **Ground Thirty-Five:  Appellant Counsel was Deficient for Failing to Raise All Issues of Ineffectiveness of Trial Counsel that's Evident from the Record**

Crook argues that his appellant counsel was deficient for failing to raise all the issues of ineffectiveness of trial counsel evident from the record. As the Court finds that it was not unreasonable for the Mississippi Supreme Court to find that Crook had effective assistance of counsel at trial, it would not have been unreasonable for them to find that failure to raise meritless claims did not amount to deficient performance. Therefore, it was not unreasonable for the state court to not grant collateral relief on this ground, and federal habeas relief is not appropriate.

36.     **Ground Thirty-Six:  The Cumulative Errors of Counsel Denied Crook Fundamentally Fair Trial and Prejudiced his Defense**

Crook argues on this ground that the numerous errors made by counsel, taken together, deprived him of effective assistance of counsel. The state courts, however, found no such errors by defense counsel, and this Court has found those findings to be reasonable. It was not unreasonable for the state court to find that errors it found did not exist also did not provide a basis for relief when taken cumulatively. Therefore, federal habeas relief will be denied on this ground as well.

**D.     Motion for Hearing [18]**

In his Motion for Hearing [18], Crook asks the Court for an evidentiary hearing and discovery because the trial record is not sufficient to support his claims. Under 28 U.S.C. § 2254(e)(2):

>    If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that–
>
>    (A) the claim relies on–
>
>    (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>
>    (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
>
>    (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

None of Crook's claims rely on a new rule of constitutional law, nor do they rely on a factual predicate not previously discovered.  As such, the Court cannot grant Crook an evidentiary hearing or discovery under § 2254(e)(2).  The Motion for Hearing [18] will be **denied**.

## III.  CONCLUSION

IT IS THEREFORE ORDERED AND ADJUDGED that the Petition [1] is **denied** and this case will be **dismissed with prejudice**.

IT IS FURTHER ORDERED AND ADJUDGED that the Motion for Hearing [18] is **denied**.

SO ORDERED AND ADJUDGED this the 5th  day of February, 2016.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE